Steven C. Boos, USB# 4198
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue, Suite 123
P.O. Box 2717
Durango, Colorado  81301/2
(970) 247-1755 / Facsimile:  (970) 247-8827
E-mail:   sboos@mbssllp.com

Eric P. Swenson, USB #3171
1393 East Butler Avenue
Salt Lake City, Utah 84102
Telephone: (801) 521-5674
E-mail: e.swenson4@comcast.net

D. HARRISON TSOSIE, USB# 7329
Navajo Nation Attorney General
NAVAJO NATION
    DEPARTMENT OF JUSTICE
P.O. Box 2010
Window Rock, Arizona  86515-2010
(928) 871-6345 / Facsimile:  (928) 871-6177
E-mail:   htsosie@nndoj.org

**ATTORNEYS FOR PLAINTIFFS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **NAVAJO NATION**, a federally recognized Indian tribe, et al., <br><br> Plaintiffs, <br> v. <br><br> **SAN JUAN COUNTY**, a Utah governmental subdivision, <br><br> Defendant. | **SECOND AMENDED COMPLAINT** <br><br><br><br> Civil No. 2:12-cv-00039-RS <br><br> Judge Robert Shelby |

Plaintiffs allege as follows:

### Introduction

1.      This action concerns the disenfranchisement of Indian voters in San Juan County,

Utah, through Defendant's action in apportioning County Commission and School Board

election districts in violation of the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution, the Fifteenth Amendment to the United States Constitution and the

Voting Rights Act of 1965, 42 U.S.C. § 1973, *et seq.* ("Voting Rights Act").

**Jurisdiction and Venue**

2.      This Court has jurisdiction over the claims enumerated in the Complaint pursuant

to 28 U.S.C. §§ 1331, 1343(3)-(4), 1357, 42 U.S.C. § 1973j(f) and 42 U.S.C. §§ 1983, 1988(a).

Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the defendant is a

resident of this judicial district and a substantial part of the events or omissions giving rise to the

claims enumerated in this complaint occurred within this judicial district.

**Parties**

4.      Plaintiffs Lorena Atene, Tommy Rock, Harrison (Hutchins) Hudgins, Wilfred

Jones, Elsie Billie, and Herman Farley are residents of San Juan County, Utah, and registered

voters qualified to vote in elections for public office. They are enrolled members of the Navajo

Nation and belong to a racial, ethnic and language-minority group.

5.      Plaintiff Navajo Nation ("Nation") is the government of a federally-recognized

tribe of Indians occupying lands in San Juan County, Utah, that are held in trust by the United

States. These trust lands are located in San Juan County Commission election Districts One and

Three. The Nation owns fee land in San Juan County near Blanding City in election District

Two. The Nation's members are residents and voters in San Juan County and reside in all

County election precincts and districts. The Nation conducts governmental operations in San

Juan County, including tribal elections.

6.     Defendant San Juan County ("County") is a local unit of Utah state government. Its executive and legislative body is the San Juan County Commission ("Commission"). The Commission's members are elected from three, single-member districts that were created in 1984 as a result of this Court issuing an injunction to address the failure of the County to fully comply with Section 2 of the Voting Rights Act.

<u>**General Allegations**</u>

7.     Congress extended citizenship to Indians through its approval of the Indian Citizenship Act of 1924 (43 U.S. Stats. At Large, Ch. 233, p. 253 (1924); 8 U.S.C. § 1401(b)).

8.     Despite the extension of citizenship to Indians, many states, including Utah, continued to systematically disenfranchise Indians by denying them the right to vote.

9.     Prior to 1957, a Utah statute, Section 20-2-14(11), U.C.A 1953, denied Indians the right to vote, which the County implemented by not registering Indians to vote and by denying them access to the ballot box, but when the constitutionality of that statute was challenged in the United States Supreme Court, the Utah legislature repealed it and Utah became the last state to legally allow Indian voting.

10.     The repeal of U.C.A. § 20-2-14(11) did not end impediments to Indian enfranchisement in Utah and, in the County in particular. Despite the fact that, following repeal, many Indians in the County registered to vote, legal action was needed to protect Indian voting rights when, in 1972, the County impeded Navajos from becoming candidates for the Commission. In an action in this court, *Yanito v. Barber,* 348 F. Supp. 587 (D. Utah 1972), an injunction against the County was required to remove those impediments.

11.     In addition, the County diluted Indian voting strength through at-large election of County commissioners, a practice that was challenged in 1983 through a lawsuit filed in this Court by the United States Justice Department and in which the County agreed "that the process leading to the selection of [its] County Commissioners fails to comply fully with . . . Section 2 of the Voting Rights Act". See *United States v. San Juan County, et al.*, No. C-83-1286W (D. Utah, April 4, 1984).

12.     As a result of the 1983 litigation, this Court entered a permanent injunction against the County for violations similar to those alleged in the present case, required the County to adopt separate election districts for the election of commissioners and a three-judge panel of this court certified the County for federal election examiners.

13.     The acts and omissions complained of herein were, and continue to be, taken under color of state law and pursuant to authority granted by the State of Utah.

<u>**First Claim**</u>

14.     Plaintiffs re-allege Paragraphs One through 13 as if fully set forth herein.

15.     The County's current population of Indians is 7,693, or 52.17% of the total population of 14,746. The voting-age population of Indians in San Juan County is 4,897, or 50.33% of the total voting-age population. The voting-age population of non-Hispanic whites in San Juan County is 46.20%.

16.     In 2011, the County was on notice that the total population and voting-age population of the County were majority- Indian.

17.     Two Commission election districts have inordinately large populations of whites

4

("White-Majority Districts One and Two") and commissioners elected to represent these districts have always been white.

18.    The third Commission election district has an inordinately large population of Indians ("Super-Majority District Three"), a condition known as "packing", and the commissioner elected to represent this district has always been an Indian.

19.    The population of Indians in the County is sufficiently large and geographically compact to require two or more single-member Commission districts with majority voting-age Indian populations.

20.    On November 14, 2011, the County, through two of its three duly authorized commissioners, purported to enact legislation reapportioning the three Commission election districts.

21.    Representatives of the Nation were present at the Commission meeting on November 14, 2011, and offered up-to-date information and technical assistance to the Commission in order to ensure a correct reapportionment.

22.    The Nation's representatives placed the County on notice that the existing plan for Commission election districts was mal-apportioned, and that Super-Majority District Three required modification to address the long-standing issue of packing Indian voters into a single election district.

23.    The Commission departed from its usual method of enacting legislation and the Nation's representatives left the November 14, 2011 Commission meeting after being told by the Commissioners that no decision would be made concerning reapportionment at that meeting;

however, Commission minutes indicate that the election districts were, nonetheless, reapportioned on that day, with the two white commissioners supporting the decision and the Indian commissioner opposing the proposed reapportionment.

24.     In enacting the reapportionment, the County did not utilize current, available data and technology to reapportion Commission election districts, despite the offers of up-to-date information and technical assistance extended by the Nation's representatives.

25.     The reapportionment approved by the Commission on November 14, 2011, made population adjustments to White-Majority Districts One and Two that retained the characteristics of dominant white voting districts, while Super-Majority District Three was not changed and retained the characteristics of a packed Indian voting district.

26.     Super-Majority District Three diminishes County-wide Indian voting strength because its Indian voting age population is packed into one election district and this prevents Indians in District Three, and elsewhere in the County, from participating in the electoral process equally with other voters and electing their preferred candidates.

27.     White-Majority Districts One and Two diminish Indian voting strength and enable these districts to elect white candidates that are always a majority of the County commissioners.

28.     The County failed and refused to apportion the Commission election districts in a way that corrected the problems with White-Majority Districts One and Two and ended packing in Super-Majority District Three.

29.     Statements were made by a white County commissioner before the November 14, 2011, meeting, and subsequently by individuals acting on his behalf, implying that racial animus

was a motive for the mal-apportioned reapportionment.

30.     Commission election districts were mal-apportioned as a result of racial discrimination.

31.     In 2012, San Juan County conducted elections utilizing mal-apportioned Commission and school board election districts, including a contest in which an Indian was an unsuccessful County Commission candidate from White-Majority District One.

32.     The foregoing acts and omissions of the County constitute intentional racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment to the United States Constitution.

## Second Claim

33.     Plaintiffs re-allege Paragraphs One through 32 as if fully set forth herein.

34.     The Indian voting-age population in the County is sufficiently large and geographically compact to make up a majority in two or more single-member Commission districts.

35.     Indian voters are politically cohesive in that a significant number of them usually vote for the same candidates.

.     36.     White voters usually vote as a bloc to defeat Indian voters' preferred candidates.

37.     There is a pattern and practice of official discrimination in the County's electoral history that has weakened the right of Indians to equally participate in the democratic process and elect their preferred candidates.

38.     Voting in the County is racially polarized.

7

39.     The County used voting practices or procedures that enhanced the opportunity for discrimination against Indians.

40.     Indians have been denied access to the candidate-slating process.

41.     Indians in the County bear the effects of discrimination that hinder their ability to effectively participate in the political process and to elect their preferred candidates.

42.     Political campaigns in the County have been characterized by overt or subtle racial appeals.

43.     Indians are infrequently elected to public office in the County.

44.     Indians are infrequently appointed to public office in the County.

45.     There is a singular lack of responsiveness on the part of elected officials to the particular needs of Indians in the County.

46.     On November 14, 2011, County commissioners purportedly reapportioned County commission election districts.

47.     The purported policies utilized by the County in reapportioning the Commission election districts in 2011, including compliance with the one-man-one-vote requirement, are tenuous.

48.     The reapportionment of Commission election districts in 2011 changed White-Majority Districts One and Two, but not Super-Majority District Three, which remains a packed election district.

49.     Super-Majority District Three diminishes Indian voting strength and lessens the ability of Indian voters to participate in the electoral process equally with other voters and elect

preferred candidates.

50.     White-Majority Districts One and Two provide whites with increased voting strength that is disproportionate to the voting strength of Indian voters in the County.

51.     Indian voters in White-Majority Districts One and Two have diminished voting strength to participate in the electoral process equally with other voters and elect their preferred candidates.

52.     The County has violated the Voting Rights Act in that the dilution and diminishment of Indian voting strength causes Indians to have an unequal opportunity to participate in the electoral process and elect their preferred candidates.

### Third Claim

53.     Plaintiffs re-allege Paragraphs One through 52 as if fully set forth herein.

54.     The Commission is the legislative body that apportions election districts for the San Juan County Board of Education ("School Board").

55.     An all-white, five-member school board was created in 1956 and  later changed to include two Indian members; however, the County has maintained School Board election districts that are mal-apportioned by race and population and this mal-apportionment is reflected in a history of racial discrimination in school district programs and services.

56.     In 2012, the Indian voting-age population constitutes a super-majority in School Board Districts Four and Five.

57.     Indians of voting age could be a majority in School Board District Three; however, there is an inordinately low number of Indian voters apportioned to this district.

9

58.    The County's apportionment of School Board election districts dilutes Indian voting strength and causes Indian voters to have less opportunity than other voters to participate in the electoral process and elect candidates of their choice.

59.    The County is in violation of the Voting Rights Act through its mal-apportionment of School Board election districts.

## Fourth Claim

60.    Plaintiffs re-allege Paragraphs One through 59 as if fully set forth herein.

61.    The County is required by law to establish and maintain School Board election districts that are in equal proportion to the population and deviation from the median population makes the voting strength of the electorate and corresponding weight of representation on the School Board unequal.

62.    School Board election Districts One and Five are not equal in proportion to the population.

63.    The voting strength of Indian voters in election Districts One and Five is diluted and these Indian voters are therefore denied voting strength and weight of representation on the School Board on an equal basis with other voters.

64.    As a result of the mal-apportionment of Districts One and Five, Indian voters in other districts are denied voting strength and weight of representation on the School Board on an equal basis with other voters.

65.    The foregoing acts and omissions of the County violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment of this Court granting the following relief::

1.      Entering declaratory and injunctive relief enjoining San Juan County from violating the Constitution and federal statutes underlying each claim for relief.

2.      Ordering San Juan County to submit a remedial plan to reapportion County and School Board election districts and otherwise comply with federal statutes and the Constitution.

3.      Retaining jurisdiction over this action to monitor and enforce San Juan County's compliance with the remedial plan and all orders of this Court.

4.      Awarding the plaintiffs reasonable attorneys' fees, costs and expenses, including expert witness fees, under applicable law.

5.      Granting such other relief as the Court deems appropriate.

Dated this 28th day of December, 2012.

MAYNES, BRADFORD, SHIPPS & SHEFTEL, LLP


by:____*/s/  Steven C. Boos*_____
        Steven C. Boos
        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 28th day of December, 2012, I electronically filed the foregoing document with the U.S. District Court for the District of Utah. Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

       Jesse C. Trentadue
       Carl F. Huefner
       Britton R. Butterfield
       **SUITTER AXLAND, PLLC**
       8 East Broadway, Suite 200
       Salt Lake City, Utah 84111
       E-mail: jesse32@sautah.com
       E-Mail: chuefner@sautah.com
       E-Mail: bbutterfield@sautah.com

                                     */s/  Steven C. Boos*