IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION, a federally recognized Indian tribe, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAN JUAN COUNTY, a Utah governmental subdivision, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:12-CV-00039 <br><br> Judge Robert J. Shelby |

Plaintiffs Navajo Nation and several individual tribe members (collectively Navajo Nation) filed this action, alleging that Defendant San Juan County has violated the Equal Protection Clause of the Fourteenth Amendment, the Fifteenth Amendment, and Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.  (Dkt. 75.)  San Juan County moves the court to dismiss Navajo Nation's First and Second Claims for Relief, based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), 12(c), and 19.  (Dkt. 98.)

For the reasons stated below, the court denies San Juan County's Motion to Dismiss.

## BACKGROUND

Navajo Nation is a federally recognized Indian tribe, occupying lands held in trust by the United States, some of which are located in parts of San Juan County.  San Juan County is a governmental subdivision of the State of Utah.  The County's executive and legislative body is the San Juan County Commission (the Commission).

In 1983, the United States Justice Department filed suit against the County in the United States District Court for the District of Utah, alleging that election of commissioners through an at-large election system diluted the voting strength of Native Americans.[1] This litigation resulted in an injunction against the County, and entry of an Agreed Settlement and Order (Settlement) between the United States and San Juan County. *United States v. San Juan County, et al.*, No. C-83-1286W (D. Utah, April 4, 1984). The Settlement stated that "the process leading to the selection of County Commissioners in San Juan County" had failed to "comply fully" with Section 2 of the Voting Rights Act, and directed the County to pursue a change in its form of government to remedy this failure. The Settlement envisioned an alternative form of government based on "fairly drawn single member districts," replacing the existing at-large system.

Three single-member election districts were duly created in 1984. Since then, the commissioners elected from Districts One and Two have been white, and the commissioners elected from District Three have been Native American.

Navajo Nation sought reapportionment of these districts through political means, based on the current demographics of San Juan County. The 2010 U.S. Census determined that the total population of San Juan County was 14,746 and that the non-Hispanic white percentage was 46.2%. Navajo Nation claims that the County's current population of Native Americans is 52.17% of the total population, and that the voting-age population is 50.33%. In Navajo Nation's view, District Three has an inordinately large population of Native Americans, thus "packing" minority voters into one district. Navajo Nation argues that the Commission should

---

[1] At-large systems have historically proven vulnerable to Section 2 challenges. *See Section 2 of the Voting Rights Act*, DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/vot/sec_2/about_sec2.php ("Most of the cases arising under Section 2 since its enactment involv[e] challenges to at-large election schemes.").

have two or more single-member districts with majority voting-age Native American populations.

At a November 14, 2011 meeting, the Commission considered plans for redrawing election district boundaries. Representatives of Navajo Nation attending the meeting presented a proposed reapportionment plan, but the Commission did not adopt it. Instead, the Commission made boundary changes to Commission election Districts One and Two, but not to District Three. Commissioners from Districts One and Two voted in favor of the plan, and the Commissioner from District Three voted against it. In Navajo Nation's view, this reapportionment retained an inordinate concentration of white voters in Districts One and Two, and of Native American voters in District Three.

Navajo Nation then brought suit in this court. At issue in this Motion are Navajo Nation's first two claims, alleging violations of the Fourteenth and Fifteenth Amendments to the United States Constitution, and Section 2 of the Voting Rights Act. (Dkt. 75, pp. 4-9.) San Juan County has moved to dismiss these claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), 12(c), and 19. (Dkt. 98.) San Juan County's argument centers on the 1984 Settlement and its potential impact on both this court's jurisdiction and Navajo Nation's ability to bring these claims.

## ANALYSIS

San Juan County argues that the court lacks subject-matter jurisdiction to decide the case. The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. &*

*L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  The court first addresses this argument, concluding that there is subject-matter jurisdiction over Navajo Nation's claims.

**A. Subject-Matter Jurisdiction**

San Juan County submits that the court lacks subject-matter jurisdiction to consider a collateral attack on a consent decree to which another court retains jurisdiction.  Specifically, the County argues that the original court, in its ongoing supervision of the 1984 Settlement, retains jurisdiction over disputes involving County election districts.  Second, San Juan County argues that the Settlement is a form of contract, and that modifying this judgment is impermissible.  San Juan County claims that the election district boundaries were agreed to by the United States and San Juan County and fixed by the Settlement, and that the court therefore lacks subject-matter jurisdiction to modify the prior judgment.

San Juan County's first argument fails because Navajo Nation's first and second claims are not a collateral attack on the Settlement.  San Juan County's second argument fails because Navajo Nation is not seeking to modify the Settlement.  The Settlement does not deprive this court of subject-matter jurisdiction to decide Navajo Nation's claims.

Turning to the County's first argument, it is well established that parties to a consent decree may not collaterally attack the judgment in a separate action.  *See Barfus v. City of Miami*, 936 F.2d 1182, 1185 (11th Cir. 1991) (noting "case law holding that a party or privy to a consent decree cannot launch a collateral attack upon the decree").  However, Navajo Nation is not a party to the 1984 Settlement, nor is it in privity with anyone who is.  For this reason, the doctrine prohibiting collateral attacks does not apply to Navajo Nation.  *See Ashley v. City of Jackson, Miss.*, 464 U.S. 900, 902 (1983) (Rehnquist, C.J. & Brennan, J. dissenting from a denial of

certiorari) ("It is fundamental premise of preclusion law that nonparties to a prior action are not bound by the judgment.").

San Juan County's argument rests in part on the faulty notion that the court in control of the Settlement retains exclusive jurisdiction over its subject matter, rendering any action touching its concerns "collateral."  San Juan County cites *O'Burn v. Shapp*[2] as authority that addressing the *subject* of a prior binding agreement can render an action an impermissible collateral attack, even when plaintiffs are not parties and lack privity.  This cited authority is unconvincing.  "Collateral attacks" are best understood as challenges to binding final judgments.  Even if the court accepted that in some situations the subject matter of consent decrees could bar even unrelated parties from bringing suit, the present suit does not address the subject matter of the 1984 Settlement.

In entering the 1984 Settlement, the District Court of Utah stated that "[t]his Court has jurisdiction over this matter and shall retain jurisdiction for all purposes."  (Dkt. 98-2, p. 3.)  The court's order includes no time limit or set expiration on its jurisdiction.  In San Juan County's reading, "this matter" includes the election districts that were to be established.  Navajo Nation's present lawsuit seeks to alter the districts that were thereafter formed, and therefore, in San Juan County's view, addresses issues within the scope of the Settlement.  San Juan County, however, reads the scope of the Settlement too broadly.  Navajo Nation is not seeking relief inconsistent with the Settlement, nor even touching on its substance.

As Navajo Nation correctly notes, the "substance" of the 1984 Settlement "was the establishment of an election system in which San Juan County Commissioners were selected from three single-member districts rather than through at-large voting." (Dkt. 101, p. 5.)  The

---

[2] 70 F.R.D. 549 (E.D. Pa 1976).

Settlement repeatedly focuses on the *form of government* in San Juan County and the general method or process of selection. The court refers to continued pursuit of an "optional form of government consisting of fairly drawn single member districts as authorized by state law"; the need to "modify the *process* leading to the selection of County Commissioners in San Juan County, Utah"; and the possibility of a hearing "limited to the consideration of election plans designed to replace the current at-large method of selecting County Commissioners in San Juan County." (Dkt. 98-2, p. 2.) (emphasis added). The Settlement further envisions that "should an alternative form of government consisting of single member districts be approved," San Juan County would be required to take certain steps to ensure that elections are not unduly delayed. *Id* at 2-3.

The Settlement describes the "issue of liability" it addresses as "the current method of electing County Commissioners." This method is no longer in place. In 1984, the "method" and "process" of elections in San Juan County transitioned, as contemplated by the Settlement, from election through at-large districts to an "alternative form of government" based on single-member election districts. The Settlement involves questions regarding the form of government, not the particulars of its composition. This construction does not minimize the Settlement's import, since the transition itself is significant: according to San Juan County, the county remains unique in the state of Utah in using single-member election districts in commission elections. (Dkt. 80, p. 8.) With the change in the form of government achieved and preserved, however, as Navajo Nation notes, "[t]here is actually nothing left for the Court to do" in the 1984 case. (Dkt. 101, p. 4, n.3.) Contrary to San Juan County's suggestion, the Settlement did not expressly establish the single-member districts and did not set forth their boundaries.

In this suit, Navajo Nation is not seeking to replace at-large districts with single-member districts; this aim was accomplished in 1984. Nor is Navajo Nation seeking to return to at-large districts. Navajo Nation instead argues that the single-member districts as presently drawn violate both the Constitution and the Voting Rights Act, and seeks alteration of those districts' boundaries and demographic composition.

Navajo Nation seeks a remedy under Section 2 of the Voting Rights Act, as the United States did in the prior litigation. Proceeding under the same statute does not mean that Navajo Nation's claims touch on the subject matter of the 1984 Settlement, in part because there are different ways to violate Section 2. When the court found in 1984 that the "process leading to the selection of County Commissioners in San Juan County, Utah" violated the Voting Rights Act, this meant that a system based on at-large districts impermissibly blocked Native American voters from appropriate representation, specifically by denying rights to a then-minority Native American population. Navajo Nation in this suit claims that a subsequent system of single-member election districts has denied rights to a majority Native American population, based on boundaries last altered in 2011—27 years after the Settlement was adopted in 1984. The difference between the subject and purpose of the two suits is clear.

Finally, the court notes that San Juan County's present position is at odds with its own prior conduct. If alteration of election district boundaries is permissible only through the original litigation, then it is unclear how the Commission could have redrawn its boundaries in 2011 without first obtaining relief from the original court. Given that the original court was not involved, and that San Juan County has provided no reason to believe that the Commission's actions in 2011 were unauthorized, San Juan County cannot fairly argue that its construction of the scope and preclusive effect of the Settlement bars Navajo Nation's present claims. *See*

*Penny v. Giuffrida*, 897 F.2d 1543, 1546 (10th Cir. 1990) (discussing equitable estoppel, and noting that "the government is ordinarily bound by the authorized acts of its agents under traditional concepts of agency or contract law.").

San Juan County also argues for precluding Navajo Nation's claims because they would modify the Settlement.  But San Juan County's claim that the boundaries were a part of the consent decree is inaccurate; the decree did not establish these boundaries, either explicitly or by reference.  (Dkt. 98-2, pp. 1-3.)  Of at least equal importance, the scheme of boundaries enacted in 1984 is not at issue in the present litigation.  The election boundaries as they stood in 1984 no longer exist, given the alterations made in 2011.  If Navajo Nation prevailed, the remedy would by necessity involve redrawing one or both of Districts One and Two, thereby addressing actions taken in 2011, rather than 1984.

Navajo Nation has not made an impermissible collateral attack on the Settlement, and does not seek to modify the Settlement.  Consequently, the Settlement does not bar subject-matter jurisdiction over this case.  The court finds that it has subject-matter jurisdiction over the claims enumerated in the Complaint pursuant to 28 U.S.C. §§ 1331, 1343(3)-(4), 1357, 42 U.S.C. §§ 1973j(f) and 42 U.S.C. §§ 1983, 1988(a).

## B. The United States as an Indispensable Party

San Juan County also argues that because the Settlement is a contractual agreement, the United States is an indispensable party.  San Juan County moves on this basis under Federal Rule of Civil Procedure 19, requiring joinder of certain parties, and Federal Rule of Civil Procedure 12(b)(7), requiring dismissal of a claim where an indispensable party is not joined.

As San Juan County argues, a "contracting party is the paradigm of an indispensable party."  (Dkt. 98, p. 7.)  Navajo Nation acknowledges that "[t]he County has shown that the

United States has an interest, through the [Settlement], in the establishment of single-member County Commission election districts." (Dkt. 101, p. 11, n.9.)  But as Navajo Nation notes, the County "has failed to show any impairment to that interest because the First and Second Claims simply do not seek to displace those election districts with some other form of government."  *Id.*

As explained above, Navajo Nation does not seek relief under the Settlement, does not address the subject matter of the Settlement, and is not seeking to modify the Settlement.  The United States would be an indispensable party to litigation involving the Settlement, but the Settlement is not at issue in this case.  Accordingly, the United States is not an indispensable party, and the County's Motion under Rule 12(b)(7) and Rule 19 fails.

**C. Rules 12(b)(6) and 12(c)**

In addition to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), and 19, San Juan County also moves to dismiss under Rules 12(b)(6) and 12(c).  San Juan County has not provided specific argument to support its Motion on this point, and its proposed bases for these Motions are unclear.  *See* Dkt. 101, pp. 3-4, n. 2.  San Juan County has not elaborated in its Reply.  (Dkt. 105.)

Having established subject-matter jurisdiction and the joinder of all necessary parties, the court finds that Navajo Nation has provided "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  It has thus satisfied the requirements of Rule 12(b)(6).  Rule 12(c) further states that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  The court finds no basis on which San Juan County would be entitled to judgment on the merits on the basis of this briefing.

## CONCLUSION

For the reasons stated, the court **DENIES** Defendant's Motion to Dismiss Plaintiffs' First and Second Claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), 12(c), and 19.

SO ORDERED this 12th day of March, 2015.

                              BY THE COURT:

                              _____
                              ROBERT J. SHELBY
                              United States District Judge