IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **NAVAJO NATION**, a federally recognized Indian tribe, **LORENA ATENE, TOMMY ROCK, HARRISON (HUTCHINS) HUDGINS, WILFRED JONES**, **ELSIE BILLIE**, and **HERMAN FARLEY**, | Case No. 2:12-cv-00039-RS |
| Plaintiffs, | |
| vs. | |
| **SAN JUAN COUNTY**, a Utah governmental sub-division; **BRUCE ADAMS**, San Juan County Commissioner / Commission Chair; **PHIL LYMAN**, San Juan County Commissioner; **KENNETH MARYBOY**, San Juan County Commissioner; and **NORMAN L. JOHNSON**, San Juan County Clerk / Auditor, | |
| Defendants. | |

## EXPERT WITNESS REPORT OF RICHARD L. ENGSTROM, Ph.D.

RICHARD L. ENGSTROM, acting in accordance with 28 U.S.C. § 1746, Fed. R. Civ. P. 26(a)(2)(B), and Fed. R. Evid. 702 and 703, does hereby declare and say:

1.    My name is Richard L. Engstrom and I am a resident of Chapel Hill, North Carolina.  I am a Research Associate at the Center for the Study of Race, Ethnicity, and Gender in the Social Sciences and a Visiting Fellow in the Social Science Research Institute at Duke University.  I am also a member of the Graduate Faculty in political science at Duke.

2.     I started my work at Duke in 2008.  Prior to that, from August of 2006 through 2007, I was employed as a consultant at the Center for Civil Rights at the School of Law, University of North Carolina at Chapel Hill.  I am a former Research Professor of Political Science and Endowed Professor of Africana Studies at the University of New Orleans, where I was employed from August 1971 to May 2006.  I have served two terms as the Chairperson of the Representation and Electoral Systems Section of the American Political Science Association (1993-1995, 1995-1997) and served as a member of the Executive Council for that section from 1993 to 2007.  A copy of my curriculum vitae is attached as an Exhibit to this report.

3.     I have done extensive research into the relationship between election systems and the ability of minority voters to participate fully in the political process and to elect representatives of their choice.  The results of my research on this topic have been published in the *American Political Science Review*, *Journal of Politics*, *Western Political Quarterly*, *Legislative Studies Quarterly*, *Social Science Quarterly*, *Journal of Law and Politics*, *St. Louis University Public Law Review, Electoral Studies*, *Representation*, *Publius*, and other journals and books.  Three articles authored or co-authored by me were cited with approval in *Thornburg v. Gingles*, 478 U.S. 30 (1986), the U.S. Supreme Court decision interpreting amended Section 2 of the Voting Rights Act.  *See* 478 U.S. at 46 n.11, 48 n.15, 53 n.20, 55, 71.  I am the co-author, with Mark A. Rush, of *Fair and Effective Representation? Debating Electoral Reform and Minority Rights* (Lanham, MD: Rowman and Littlefield Publishers, Inc. 2001).  The attached curriculum vitae contains a list of all of my publications.

4.     I also have testified as an expert witness in numerous cases in federal and state courts across the United States.  Since 2009, I have testified at trial and/or been deposed in the following cases: *Benavidez v. Irving Independent School District* (N.D. Tex. 2009), *United*

*States v. Euclid City School District Board of Education* (N.D. Ohio 2009), *Texas Latino Redistricting Task Force v. Perry* (W.D. Tex. 2011), *Committee for a Fair and Balanced Map v. Illinois State Board of Elections* (N.D. Ill. 2011), *Egolf v. Duran* (N.M. 1st Judicial Dist. Ct. Santa Fe Cnty. 2011), *Texas v. United States* (D.D.C. 2012), *Fabela v. City of Farmers Branch* (N.D. Tex. 2012), *Romo v. Detzner* (Fla. 2d Judicial Cir. Leon Cnty. 2013), *Montes v. City of Yakima* (E.D. Wash. 2014), *Benavidez v. Irving Independent School District* (N.D. Tex. 2014), *Rodriguez v. Grand Prairie Independent School District* (N.D. Tex. 2014), *Texas Latino Redistricting Task Force v. Perry* (W.D. Tex. 2014), *Hall* v. *State of Louisiana* (M.D. La. 2014), and *Missouri State Conference of the National Association for the Advancement of Colored People v. Ferguson-Florissant School District and St Louis County Board of Election Commissioners* (E.D. Mo. 2015).  I have also testified by deposition as a fact witness in *Backus v. South Carolina* (D.S.C. 2012).

      5.      I have reviewed Rule 702 of the Federal Rules of Evidence.  As I understand that rule, I am an expert in election systems and their impact on minority voters.

      6.      Attorneys for the Plaintiffs in this matter have asked me to analyze the extent to which, if any, the candidate preferences of Native American and non-Native American voters in San Juan County, Utah, as revealed in their voting behavior, have been characterized by "racially polarized voting" ("RPV").  The Supreme Court has defined that term to refer to "a consistent relationship between [the] race of the voter and the way in which the voter votes," or alternatively, voters within a protected minority group vote differently that the other voters.[1]  The elections to be analyzed for this purpose are elections to county offices involving a choice

---

[1]  *Thornberg* v. *Gingles,*  478 U.S. 30, 54 n. 21 (1986).

between or among Native American and non-Native American candidates since 2000.  Elections with this type of candidate pool are generally considered the most probative for assessing RPV.[2]

7.      There were four such elections over this time period; three were general elections and one a primary election.  They were the 2012 general election for District 1 on the County Commission, the 2010 primary election for District 4 on the School Board, the 2004 general election also for District 1 on the County Commission, and the 2002 general election for County Sheriff.  The school board election was the only nonpartisan contest; the other three were partisan contests.

8.      Attorneys for the Plaintiffs also have asked me to analyze the extent to which, if any, the candidate preferences of Native American and non-Native American voters in San Juan County, again as revealed in their voting behavior, differed in the general elections to county-wide offices in 1990.  This was a year in which Native American candidates competed against non-Native American candidates for all but one of the six countywide positions.  These were partisan elections for County Assessor, Recorder, Sheriff, Treasurer, and Clerk and Auditor (a single office).[3]

9.      I am being compensated at a rate of $300 an hour for my work on this case.

## RACIALLY POLARIZED VOTING

## DATA AND METHODS

---

[2] *See, e.g.*, *Black Political Task Force v. Galvin*, 300 F. Supp. 2d 291, 304 (D. Mass. 2004), and cases cited therein. *See also Magnolia Bar Ass'n, Inc. v. Lee*, 994 F.2d 1143, 1149 (5th Cir. 1993); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 1011-12 (D.S.D. 2004).
[3]  The exception was the uncontested election for County Attorney.

10.    The data used in the analyses of the candidate preferences of Native American and non-Native American voters include the numbers of votes cast for the various candidates in each of the precincts used in the respective elections,[4] and the racial composition of those precincts as reflected by the total voting age population (hereinafter "VAP") and Native American VAP within the precincts.[5]

11.    The estimates of the candidate preferences of the different groups of voters are derived through two methodologies. One is Gary King's Ecological Inference ("EI") procedure, accessible through R software. This version of EI not only provides a specific, or point, estimate of a group's support for a particular candidate, but also provides confidence intervals for that estimate. These intervals identify the range of estimates within which we can be 95 percent confident, statistically, of where the actual level of a group's support for a candidate falls. The point estimate is the best estimate, in that it is the value most likely to be the actual value, and estimates within the range of a confidence interval are less likely to be the true value the further away they are from the point estimate.[6] This procedure considers the votes cast in all of the precincts within an election unit (e.g., county or geographical district).

---

[4]   These data are available from the County at http://sanjuancounty.org/elections_voting_htm.

[5]   Data from the 1990, 2000, and 2010 Censuses of Population have been matched to San Juan County precincts by William Cooper, who provided this information to me. The analyses rely on the Native American VAP and total VAP as reported in the census closest to the election. In the 2010 Census, only 91 voting age residents of the county identified themselves as part Native American, leaving single race Native Americans constituting 98.1 percent of those. The respective figures for the 2000 Census are 22 and 99.1 percent. The 1990 Census did not record the number identifying as part Native American.

[6] This procedure is detailed in Gary King, *A Solution to the Ecological Inference Problem: Reconstructing Individual Behavior from Aggregate Data* (Princeton University Press, 1997), and is now used widely by expert witnesses in assessing racially polarized voting in voting rights cases. On the superiority of EI over ecological regression for assessing differences in the candidate preferences between or among groups of voters, which had been relied upon by the Supreme Court about 30 years ago in 1986 in *Gingles*, 478 U.S. at 52-53, see King, *A Solution*, at 15-16, and Justin de Benedictis-Kessner, "Evidence in Voting Rights Act Litigation:

12.    The other methodology is homogeneous precinct (HP) analysis (also known as extreme case analysis).  Precincts in which the potential electorate consists overwhelmingly of members of one group, e.g., Native Americans, are typically considered "homogeneous."  The conventional cutoff for a homogeneous precinct is 90 percent or more of a group.  In the analyses for this declaration homogeneous Native American precincts are those in which 90 percent or more of the voting age population is Native American.  Homogeneous non-Native American precincts are those in which 10 percent or less of the voting age population is Native American.  The HP procedure simply tabulates and reports the total number of votes, expressed as the percentage of the votes, received by the respective candidates in each group of homogeneous precincts.  This methodology is used along with EI in this analysis because it is straightforward and useful in areas in which minority voters and other voters are acutely segregated among precincts, as in San Juan County.[7]

## RESULTS FOR BIRACIAL ELECTIONS SINCE 2000

13.    The results of the EI analyses of the elections since 2000 are reported in Table 1 at the end of the text of this declaration.  This table contains the estimates of the levels of support for the various candidates among Native American and the other, non-Native American voters derived through EI.[8]  In the left column of the Table, the years of the election, the offices at

---

Producing Accurate Estimates of Racial Voting Patterns," *Election Law Journal,* forthcoming 2015.  EI was developed subsequent to that case for the explicit purpose of improving these estimates.  *See also* D. Stephen Voss, "Using Ecological Inference for Contextual Research," in Gary King, Ori Rosen, and Martin Tanner (eds.), *Ecological Inference: New Methodological Strategies* (Cambridge University Press, 2004), at 93 (EI "is unparalleled when applied to the actual sort of data needed for analyzing important social issues such as racial voting patterns").

[7]   The HP methodology also was relied upon in *Gingles*, at 52-53.

[8]   Section 2 of the Voting Rights Act states that a protected minority is supposed to have no less opportunity to elect representatives of its choice equal to that of  the "other members of the electorate."  The reference to a "white majority" in Prong III in the *Gingles* decision is a function

issue, and the names of the Native American candidates are provided.  The subsequent columns contain the estimates of the levels of support provided to the candidate by the respective groups. Reported in the columns are the point estimates of the level of support by the groups for the candidates, and below the point estimates, in parentheses, are the values of the 95 percent confidence interval for each estimate.  The best estimates of the voting choices of each group, the point estimates, are also reported in the text.  Table 2 is structured similarly and provides the results of the HP analyses of these elections.

14.    As revealed in both Tables 1 and 2, the votes cast in these elections were consistently divided along racial lines.  Native American voters supported Native American candidates.  The non-Native American voters shared this preference in only one of four elections however, the primary election for the District 4 seat on the school board in 2010, a district that was 97.5 percent Native American in VAP according to the 2010 Census.

County Commission District 1, 2012 General Election

15.    The most recent of the elections was the general election held in 2012 for the District 1 seat on the County Commission.  This district was 30.2 percent Native American in VAP according to the 2010 Census.  A Native American candidate, Willie Grayeyes, was the nominee of the Democratic Party in this election.  He competed with two non-Native American candidates, Bruce Adams, the Republican nominee, and Gail L. Johnson, an unaffiliated candidate.  According to the results of the EI analysis, reported in Table 1, Mr. Grayeyes finished first among the Native American voters, receiving an estimated 58.3 percent of the their votes, compared to an estimated 30.3 percent for Mr. Adams and 11.5 percent for Ms. Johnson.  Mr.

of the data specific to that case, in that the State of North Carolina recorded voters as either white or non-white at the time, with non-whites referred to as blacks in that case.  The proper

Grayeyes finished last however among the non-Native American voters, receiving an estimate of only 7.2 percent of their votes in the EI analysis.  The other 92.9 percent of their votes were cast for the non-Native American candidates, with Mr. Adams estimated to have received 48.1 percent and Ms. Johnson 44.8 percent of their votes.

16.     Reported in Table 2 are the results of the HP analysis of this election.  These counts are consistent with the EI estimates.  All but one of the eight precincts in this district is homogeneous, according to the 2010 Census data.  Two are homogeneously Native American, and five are homogeneously non-Native American.  Only 13 total votes were cast in the remaining precinct, which was only 0.6 percent of all the votes cast in the election.  This election therefore is very appropriate for a HP analysis.  As revealed in Table 2, Mr. Grayeyes received 61.8 percent of the votes cast in the homogeneous Native American precincts, compared to Mr. Adams' 34.4 percent and Ms. Johnson's 3.8 percent.  In the homogeneous non-Native American precincts Mr. Grayeyes received only 7.5 percent of the votes cast, while Mr. Adams received 51.9 percent and Ms. Johnson, 40.6 percent.[9]

17.     Mr. Grayeyes finished last overall among the three candidates, receiving 25.6 percent of the total vote.  Mr. Adams won this election, receiving 45.9 percent of the votes.

School Board District 4, 2010 Nonpartisan Primary Election

18.     The nonpartisan primary election for the District 4 seat on the school board in 2010, as noted above, was the only election analyzed in which the non-Native American voters

comparison under the statute, however, is between the protected class and the other voters.
[9]   The confidence interval around the EI point estimate for Mr. Grayeyes's Native American vote is large, as shown in Table 1, but the fact that the point estimates for both his Native American vote and his non-Native American vote differ little from the respective counts in the homogeneous precincts, 58.3 and 61.8 percent and 7.2 and 7.5 percent, and the fact that these homogeneous precincts include all but 13 of the 2,075 votes cast in this election (0.6 percent), enhance my confidence that the EI point estimate is close to the true percentage.

did not prefer a non-Native American candidate over a Native American candidate or candidates. This was a 97.5 percent Native American district in VAP according to the 2010 Census, and three Native American candidates sought the seat along with only a single non-Native American.

19.     The Native American candidates were Elsie Dee, Howard H. Todachinnie, and John Billie.  The non-Native American candidate was Michelle McCarl.  Ms. Dee received the most votes from the Native American voters according to the EI analysis, an estimated 39.4 percent, while Mr. Todachinnie finished second with 23.9 percent and Mr. Billie third with 21.4 percent, for a total of 84.4 percent of the Native American votes.  Ms. McCarl received the remaining 15.6 percent.  The non-Native Americans provided Mr. Todachinnie an estimated 27.0 percent of their votes, Ms. Dee 26.8 percent, and Mr. Billie 24.1 percent.  Ms. McCarl finished last among both groups, receiving an estimated 22.1 percent of the non-Native American vote.

20.     All three of the precincts in this district were homogeneously Native American, according to the 2010 Census, and therefore this election is also very appropriate for HP analysis.  The results of the HP counts for School District ("SD") 4 are also similar to the estimates from EI. The Native American candidates received 92.7 percent of the votes cast in them, with Ms. Dee receiving the most, 46.6 percent.  Mr. Todachinnie received 24.7 percent and Mr. Billie 21.4 percent.  Ms. McCarl came in last in this heavily Native American district with just 7.3 percent.

21.     Ms. Dee and Mr. Todachinnie received 47.2 percent and 24.5 percent respectively of the total vote in this primary, and advanced to a runoff election, which Ms. Dee won.

County Commission District 1, 2004 General Election

22.     The third election is another one for the District 1 seat on the County Commission, the general election held for that seat in 2004.  This was a two-candidate contest in

which the Native American candidate was Walter Atene, the Democratic Party nominee, and the non-Native American candidate, Bruce Adams, the Republican Party nominee.  This district was 36.0 percent Native American in VAP according to the 2000 Census.

23.     The results of the EI analysis, contained in Table 1, show that Mr. Atene was the candidate preferred by the Native American voters, having received an estimated 80.8 percent of their votes.  His support among the non-Native American voters however is estimated to be only 14.3 percent.  The counts from the HP analysis, reported in Table 2, are again consistent with the estimates from the EI analysis.  Eight of the 10 precincts in this district, according to the 2000 Census, are homogeneous. This is another context in which HP analysis is very appropriate.  Six were homogeneously non-Native American and two homogeneously Native American.  In the Native American precincts, Mr. Atene received 77.0 percent of the votes cast, while in the non-Native American precincts he received only 12.1 percent.

24.     Mr. Atene received 34.5 percent of the total votes in this election, and therefore lost to Mr. Adams.

County Sheriff, 2002 General Election

25.     The fourth election since 2000 with a biracial choice of candidates is the general election for Sheriff in 2002.  The county was 52.1 percent Native American in VAP according to the 2000 Census.   This was another two-candidate contest in which the Native American candidate, Henry Lee, was the nominee of the Democratic Party, while the non-Native American candidate, Mike Lacy, was the nominee of the Republican Party.

26.     The results of the EI analysis, contained in Table 1, show that Mr. Lee was the candidate preferred by the Native American voters, having received an estimated 78.0 percent of their votes.  His support among the Native American voters however is estimated to be only 10.5

percent.  The counts from the HP analysis, reported in Table 2, are again consistent with the estimates from the EI analysis.  Seven of the 20 precincts in this election, according to the 2000 Census, were homogeneously Native American, while six were homogeneously non-Native American.   In the Native American precincts, Mr. Lee received 80.5 percent of the votes cast, while in the non-Native American precincts he received only 16.9 percent.

27.     Mr. Lee received 40.9 percent of the total votes in this election, and therefore lost to Mr. Lacy.

Conclusion

28.     The elections in which voters in San Juan County were presented with a choice between or among Native American and non-Native American candidates since 2000 typically resulted in racially divided candidate preferences.  The Native American voters were always cohesive in their support for Native American candidates, and non-Native American voters invariably vetoed that choice when the elections were held in a context in which a majority of the VAP was not Native American.

## RESULTS FOR THE 1990 GENERAL ELECTION

## FOR COUNTYWIDE OFFICES

The 1990 Elections for Countywide Offices

29.     As noted above, in the 1990 general election Native Americans candidates ran for five of the six countywide offices in San Juan County.  All of these Native Americans ran as the nominees of the Democratic Party, and their non-Native American opponents ran as nominees of the Republican Party.  The county was 51.7 percent Native American in VAP according to the Census taken that same year.  The results of these elections were a shutout for the non-Native Americans.   In each of the five elections, Native American voters displayed a preference,

11

through their voting behavior for the Native American candidate. Non-Native American voters vetoed the Native-American candidate in each of these elections.

30.     Table 3 is structured in the same manner as Table 1, and contains the EI estimates for the Native American and non-Native American support for the candidates in these elections. And Table 4, structured in the same manner as Table 2, contains the results of the vote counts in the Native American and non-Native American in the homogeneous precincts across the county. Over half of the 20 precincts across the county were homogeneous according to the 1990 Census, five being homogeneously Native American and eight being homogeneously non-Native American.  Once again, the HP counts are consistent with the EI estimates for each election.

31.     The Native American candidate for the office of Assessor was Dan Nakai.  He is estimated in the EI analysis to have received 82.5 percent of the votes cast by Native Americans, and only 8.9 percent by the non-Native American voters.  He also received 82.5 percent of the votes cast in the homogeneous Native American precincts, and 14.1 percent in the homogeneous non-Native American precincts.  He received 44.6 percent of the total vote and therefore lost the election.

32.     The Native American candidate for the office of Recorder was Claudia I. Keith. She is estimated in the EI analysis to have received 80.1 percent of the votes cast by Native Americans, and only 4.9 percent by the non-Native American voters.  She received 79.4 percent of the votes cast in the homogeneous Native American precincts, and only 6.3 percent in the homogeneous non-Native American precincts.  She received 40.1 percent of the total vote and therefore lost the election.

33.     The Native American candidate for the office of Sheriff was Nelson B. Begay. He is estimated in the EI analysis to have received 70.8 percent of the votes cast by Native

Americans, and only 6.8 percent by the non-Native American voters.  He received 73.1 percent of the votes cast in the homogeneous Native American precincts, and only 9.4 percent in the homogeneous non-Native American precincts.  He received 37.9 percent of the total vote and therefore lost the election.

34.     The Native American candidate for the office of Treasurer was Julius Claw.  He is estimated in the EI analysis to have received 80.3 percent of the votes cast by Native Americans, and only 5.0 percent by the non-Native American voters.  He received 80.2 percent of the votes cast in the homogeneous Native American precincts, and only 7.4 percent in the homogeneous non-Native American precincts.  He received 40.8 percent of the total vote and therefore lost the election.

35.     The Native American candidate for the office of Clerk and Auditor was Ruby Nakai.  She is estimated in the EI analysis to have received 79.7 percent of the votes cast by Native Americans, and only 8.6 percent by the non-Native American voters.  She received 81.0 percent of the votes cast in the homogeneous Native American precincts, and only 10.7 percent in the homogeneous non-Native American precincts.  She received 42.8 percent of the total vote and therefore lost the election.

Conclusion

36.     There were pronounced differences in the candidate preferences of Native American voters and non-Native American voters in the 1990 general elections for countywide offices that offered voters in San Juan County a choice between a Native American and non-Native American candidate.  Native Americans clearly showed, through their voting behavior, a preference to be represented by Native American candidates, while non-Native Americans clearly showed, through their voting behavior, a preference to be represented by non-Native

American candidates.   Each of these elections resulted in the election of the non-Native American candidate.

## SUMMARY

37.     Both sets of elections analyzed above have been characterized by racially polarized voting, as that term is defined by the United States Supreme Court in *Thornburg* v. *Gingles*, in that in San Juan County there is "a consistent relationship between [the] race of the voter and the way in which the voter votes," with Native American and non-Native American voters voting differently (at 54, n. 21).

Should additional documents or information be provided to me for review and analyze, I reserve the right to take these additional materials into account, modify and/or supplement my opinions, as well as to offer new opinions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on August 31, 2015 in Durham, North Carolina.

Richard L. Engstrom

**Table 1:  Racially Polarized Voting Analysis**

**Elections to San Juan County Offices since 2000**

**EI Estimates of the Votes for Native American Candidates**

|  | % of Native American Votes | % of non-Native American Votes |
|---|---|---|
| **County Commission, D1** | | |
| General Election, 2012 | | |
| Grayeyes | 58.3 | 7.2 |
|  | (9.2 – 65.6) | (3.0 – 14.5) |
| **School Board, D4** | | |
| Primary, 2010 | | |
| Dee | 39.4 | 26.8 |
|  | (33.7 – 46.3) | (25.4 – 29.7) |
| Todachinnie | 23.6 | 27.0 |
|  | (20.5 – 29.6) | (24.2 – 29.6) |
| Billie | 21.4 | 24.1 |
|  | (17.0 – 30.6) | (22.0 – 27.4) |
| **County Commission, D1** | | |
| General Election, 2004 | | |
| Atene | | |
|  | 80.8 | 14.3 |
|  | (71.7 – 89.9) | (7.0 – 24.8) |
| **County Sheriff** | | |
| General Election, 2002 | | |
| Lee | 78.0 | 10.5 |
|  | (64.5 – 85.9) | (4.5 – 17.7) |

**Table 2:  Racially Polarized Voting Analysis**

**Elections to San Juan County Offices since 2000**

**HP Counts of the Votes for Native American Candidates**

|  | % of Native American Votes | % of non-Native American American Votes |
|---|---|---|
| **County Commission, D1** | | |
| General Election, 2012 | | |
| Grayeyes | 61.8 | 7.5 |
| | | |
| **School Board, D4** | | |
| Primary, 2010 | | |
| Dee | 46.6 | NA |
| Todachinnie | 24.7 | NA |
| Billie | 21.4 | NA |
| **County Commission, D1** | | |
| General Election, 2004 | | |
| Atene | 77.0 | 12.1 |
| | | |
| **County Sheriff** | | |
| General Election, 2002 | | |
| Lee | 80.5 | 16.9 |

**Table 3:  Racially Polarized Voting Analysis**

**Elections to San Juan Countywide Offices**

**General Election 1990**

**EI Estimates of Votes for Native American Candidates**

|  | % of Native American Votes | % of non-Native American American Votes |
|---|---|---|
| **County Assessor** | | |
| D. Nakai | 82.5 (69.9 – 92.5) | 8.9 (4.2 – 13.9) |
| **County Recorder** | | |
| Keith | 80.1 (67.0 – 90.7) | 4.9 (1.8 – 9.9) |
| **County Sheriff** | | |
| Begay | 70.8 (58.7 – 81.6) | 6.8 (3.1 – 11.5) |
| **County Treasurer** | | |
| Claw | 80.3 (66.9 – 91.2) | 5.0 (1.9 – 9.9) |
| **County Clerk and Auditor** | | |
| R. Nakai | 79.7 (65.8 – 90.9) | 8.6 (3.6 – 14.0) |

**Table 4:  Racially Polarized Voting Analysis**

**Elections to San Juan Countywide Offices**

**General Election 1990**

**HP Counts of Votes for Native American Candidates**

|  | % of Native<br>American Votes | % of non-Native American<br>American Votes |
|---|---|---|
| **County Assessor** | | |
| D. Nakai | 82.5 | 14.1 |
| **County Recorder** | | |
| Keith | 79.4 | 6.3 |
| **County Sheriff** | | |
| Begay | 73.1 | 9.4 |
| **County Treasurer** | | |
| Claw | 80.2 | 7.4 |
| **County Clerk and Auditor** | | |
| R. Nakai | 81.0 | 10.7 |