Steven C. Boos, USB# 4198
Maya Leonard Kane, *Pro Hac Vice*
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue, Suite 123
Durango, Colorado 81301
(970) 247-1755 // Facsimile: (970) 247-8827
E-mail: sboos@mbssllp.com;
mkane@mbssllp.com

Eric P. Swenson, USB #3171
1393 East Butler Avenue
Salt Lake City, Utah 84102
Telephone: (801) 521-5674
E-mail: e.swenson4@comcast.net

**ATTORNEYS FOR PLAINTIFFS TOMMY ROCK, WILFRED JONES, HARRISON HUDGINS, LORENA ATENE, ELSIE BILLIE AND HERMAN FARLEY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

**NAVAJO NATION**, a federally recognized Indian tribe, et al.,

Plaintiffs,

v.

**SAN JUAN COUNTY**, a Utah governmental subdivision,

Defendant.

JOHN DAVID NIELSON, Clerk/Auditor of San Juan County,

Contemnor.

**MOTION TO REOPEN AND FOR ORDER TO SHOW CAUSE AND MODIFY ORDER AND JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**
**(HEARING REQUESTED)**

Civil No. 2:12-cv-00039-RS

Judge Robert Shelby
Magistrate Judge Dustin B. Pead

## I. MOTION

Plaintiffs Tommy Rock, Wilfred Jones, Harrison Hudgins, Lorena Atene, Elsie Billie and Herman Farley (Individual Plaintiffs) move that the Court reopen this case for the limited purpose of considering their motion for an order to show cause. Judgment was entered in this

case on January 11, 2018.[1] The Court directed the Clerk to close the case.[2] This Court retains jurisdiction to enforce the judgment. The Court should therefore reopen this case for the limited purpose of considering the plaintiffs' motion for an order to show cause.

Individual Plaintiffs further move for an order requiring San Juan County and its official Clerk/Auditor John David Nielsen to appear before the Court and show cause why they should not be held in contempt, pursuant to 18 U.S.C. § 401(3), for failing to comply with the Memorandum Decision and Order of December 21, 2017 (Order) and the Judgment.[3] Individual Plaintiffs further move that the Court impose such sanctions as will ensure immediate compliance with the Order and Judgment.

Individual Plaintiffs also seek modification of this Court's Order and Judgment because the substantial change in circumstances alleged in this Motion warrants changes and modifications in this Court's monitoring and enforcement of the Judgment.[4] The proposed modifications are tailored to the changed circumstances.[5] The modifications appropriately resolve the problems created by the change in circumstances.[6]

## II. LEGAL STANDARDS

### A. This Court retains jurisdiction to open this case and enforce the Order and Judgment.

Although this matter is presently on appeal, no stay of the Court's Order and Judgment has been entered. Absent a stay, this Court retains jurisdiction to enforce its judgment.[7] The

---

[1] *Judgment,* Dkt. 448, January 11, 2018.

[2] *Id*.

[3] *Memorandum Decision and Order,* Dkt. 441, December 21, 2017; *Judgment,* Dkt. 448.

[4] See Rule 60(b), Fed. R. Civ. P.; *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 390 (1992).

[5] *Id*., at 391.

[6] *Id*., at 391-392.

[7] *See Knight ex rel. P.K. v. Colvin*, 2014 WL 59994, at *5-6 (D.N.M. 2014); *S. Star Cent. Gas Pipeline, Inc. v. Cline*, 2011 WL 3847336, at *1 (D. Kan. 2011), *enforcement granted*, 2011

Court's judgment closed this case. The allegations in support of plaintiffs' motion provide good cause for opening the case and placing it on the Court's active docket.

**B. This Court has the authority to impose sanctions and provide plaintiffs with equitable relief for violations of its Order and Judgment.**

The Court has power to "punish by fine or imprisonment, or both, at its discretion such contempt of its authority, and none other, as . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command."[8] This provision gives the Court authority to impose either civil or criminal contempt sanctions, but "a contempt sanction is considered civil if it is remedial and for the benefit of the complainant."[9] The Plaintiffs here seek imposition of civil contempt sanctions to obtain compliance with the Order and the Judgment.

To prevail on a contempt motion, the moving party "has the burden of proving by clear and convincing evidence, that a valid court order existed, that the [responding party] had knowledge of the order, and that the responding party [disobeyed] the order."[10] A responding party will be held in contempt if it was not "reasonably diligent and energetic in attempting to accomplish what was ordered."[11]

Non-parties may be held in contempt if they had knowledge of the order and disobeyed. "A district court may properly exercise personal jurisdiction over a nonparty for purposes of

---

WL 4475320 (D. Kan. 2011) ("As a general rule, even after the Court has entered judgment, it retains ancillary jurisdiction to enforce its owner orders and judgments. *Hutchinson v. Beckworth*, 474 F. App'x 736, 739 (10th Cir. 2012) ("A notice of appeal divests the district court of jurisdiction over matters *involved in the appeal*, but it retains jurisdiction to consider collateral matters such as sanctions."); *see, e.g., Tiscanero v. Frasier*, 2015 WL 7756064, at *3 (D. Utah 2015) (". . . the district court had the jurisdiction to enter its sanctions order against IHC while Defendants' appeals were pending because the sanctions issue is a collateral matter.").

[8] 18 U.S.C. § 401(3).

[9] *Federal Trade Commission v. Kuykendall,* 371 F.3d 745, 752 (10th Cir. 2004).

[10] *Reliance Ins. Co. v. Mast Construction Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

[11] *Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F.Supp. 2nd 1252, 1256 (D. Utah 2000).

entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert of participation with that party, violates that order."[12] Consequently, any official of the County, such as the San Juan County Clerk/Auditor, who has knowledge of the Order and the Judgment and who did not take reasonable measures to implement or substantially comply with the Order and the Judgment may be held in contempt.[13]

**C. The Court has authority to modify its Order and Judgment.**

The Court should modify its Order and Judgment to facilitate compliance monitoring and enforcement. The evidentiary showing in support of this Motion constitutes a change in circumstances sufficient to warrant a modification of the Judgment. The Court has authority to grant this relief.[14]

**D. This Court has authority to enter a Declaratory Judgment.**

The Court should enter a declaratory judgment adjudicating the rights and duties of the parties as alleged in this Motion. The Court has authority to enter a Declaratory Judgment.[15]

## III. STATEMENT OF FACTS

1. The Clerk/Auditor of San Juan County is John David Nielson.

2. Mr. Nielson, in his official capacity, is responsible for the administration of elections in San Juan County.

3. During the pendency of this case, the County submitted a remedial plan for redistricting of the five School Board election districts.[16]

---

[12] *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215-16 (10th Cir. 2001); *see also Stotler & Co. v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989).

[13] *General Signal Corp. v. Donalico, Inc*., 787 F.2d 1376, 1379 (9th Cir., 1986).

[14] See Rule 60(b), Fed. R. Civ. P.; *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 390 (1992).

[15] 28 U.S.C. § 2201

[16] *Status Report,* Dkt. 286, January 1, 2016.

4. This remedial plan was used for the 2016 School Board Election.

5. The remedial plan shifted 491 Indian voters, who had only post office boxes for addresses, into new precincts.[17]

6. Mr. Nielson made no effort to contact these voters to inform them of their precinct changes.[18]

7. After the 2016 election, the remedial School Board plan was determined by this Court to violate the Equal Protection Clause.[19]

8. On September 29, 2017, the Court appointed a Special Master, Dr. Bernard Grofman, to develop remedial election districts for the San Juan County Commission and the San Juan County School Board.[20]

9. Dr. Grofman's Preliminary Report discussed the need for the County to develop new precincts and assess the population to be assigned to those new precincts.[21]

10. During November 2017, extensive discussion and revision of the proposed plans was undertaken, in which the County participated.[22]

11. The County had notice of those plans, which did not change greatly in the Final Report of Dr. Grofman, and which was provided to the parties on November 29, 2017.[23]

12. The Final Report stated unequivocally that "the County must match voter location descriptions to locations on a map that shows the new precinct boundaries."[24]

---

[17] Exhibit A, Eleventh Supplemental Declaration of William S. Cooper (Cooper Eleventh Suppl. Decl.), dated June 7, 2018.

[18] Exhibit B, *Deposition of John Nielson,* August 31, 2016, at 16 – 17.

[19] *Memorandum Decision and Order,* Dkt. 397, July 14, 2017.

[20] *Order*, at 6.

[21] *Preliminary Report*, Dkt. 433, at 50.

[22] *Order*, at 7 -8.

[23] *Order*, at 8.

[24] *Final Report*, Dkt. 434, at 17, n.7.

13. In a December 2017 article in the Four Corners Free Press, entitled "Dividing Lines," San Juan County Commissioners Adams and Lyman made statements that the County would not comply with the Order.[25] The article states as follows:

> When asked what the commissioners will do about the eventual implementation of the final court-ordered maps, Lyman said, "We're not going to pay any attention to them."[26]

14. In a May 12, 2018, article in the Four Corners Free Press, entitled "The cost of war: Legal battles are draining the coffers of San Juan County, Utah. Does bankruptcy loom?[27] Commissioner Lyman said he would rather be held in contempt and go to jail than comply with court-ordered redistricting and, in the same article, Commissioner Adams opined as follows:

> "You know, sometimes you do the right thing and deal with the consequences as they come. If the alternative is to cow down to Robert Shelby, I'll spend every resource at my disposal to fight what is a tremendous injustice."[28]

15. On December 21, 2017, the Court entered its Order, which required that Dr. Grofman's recommended remedial election districts be used for the 2018 elections and that elections be held for all three County Commission seats and all five School Board seats.[29]

16. The Court's electronic service affirmation indicated that the County was provided notice of these remedial plans and the Order.

17. On January 11, 2018, the Court entered its Judgment directing the County to "immediately implement [Court-ordered] remedial districts as prescribed."[30]

---

[25] Exhibit C, *Dividing lines; New voting-district maps prompt controversy in San Juan County.* Four Corners Free Press, dated December 1, 2017

[26] *Id*. at 2.

[27] Exhibit D, *The Cost of war: Legal battles are draining the coffers of San Juan County. Does bankruptcy loom?* Four Corners Free Press, dated May 12, 2018.

[28] *Id*.

[29] *Order*, at 39.

[30] Dkt. 448 at 1.

18. Implementation of the remedial plans requires that the County and the Clerk/Auditor assign voters to the new precincts and election districts.

19. The County and Clerk/Auditor have not assigned all voters to new precincts or to their correct precincts during the 4 ½ months since entry of the Order and the Judgment.

20. A primary election is scheduled for June 26, 2018.[31]

21. The County's voter files for Indian voters frequently do not show a physical address for those voters.[32]

22. The County's official list of registered voters contains many entries that have a Post Office box in place of a house number and the name of the precinct and the old precinct number (from the precincts drawn for the now districting plans determined to be unconstitutional by this Court) in place of a street name.[33]

23. Because the Post Office box numbers for Indian voters often correspond to a Post Office in another state (for example, most voters in the Navajo Mountain, Utah, area receive their mail through the Post Office in Tonalea, Arizona) and because the old precincts are now obsolete, in order to correctly vote in a new, proper precinct, the County and Clerk/Auditor must take steps to reregister voters with meaningful physical locations and then place them in the new precincts that correctly reflect Court-ordered election districts.

24. The Clerk/Auditor has acknowledged the importance of this task, stating in an email on April 25, 2018, that "it is just as important to have an updated physical address as well as a mailing address, especially with the boundaries of the Commission and School Board

---

[31] Because the County has a vote-by-mail election system, voters who wish to mail in a ballot must postmark such ballot by the day before the Primary Election, or June 25, 2018.

[32] *See e.g.* Cooper Eleventh Suppl. Decl. at ¶¶ 8-22.

[33] *Id*. at ¶¶ 22-27.

Districts being redrawn."[34]

25. Voters from the Navajo Mountain area with the surname "Graymountain" illustrate the problem. The Clerk/Auditor's files show the following for these voters:

| Name | Address | City | County | Precinct |
|---|---|---|---|---|
| Graymountain, Carl | 10005 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Carolee W | 10134 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Chrislee | 10134 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Cryshena Sheri | 10132 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Crystal Shirlee | 10134 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Elsie | 10193 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Johnny P | 10181 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |
| Graymountain, Lewis | 10005 Navajo Mtn 14 | Tonalea | San Juan | Navajo Mountain |

Physical addresses have been replaced by a 5-digit number (the voter's Post Office box), followed by the name and number of the now defunct precinct in which the voter resides.

26. In the case of Navajo Mountain, Utah, nearly every voter is listed as residing in Tonalea, AZ, which does not exist.

27. Addresses are formatted this way for nearly all voters in rural parts of the County, which includes nearly all Indian voters. What this means is that the County does not know the precincts, Commission, or School Board election districts in which voters reside. As a result, voter assignments to these precincts or districts is speculative.

28. The County and the Clerk/Auditor have not taken steps to reregister voters or correct voter registration files with meaningful physical locations and then place those voters in the new precincts and election districts. These tasks are an essential part of implementing the new districting plans as established by the Order and Judgment of the Court.[35] The Clerk/Auditor

[34] Exhibit E, Email from John David Nielson to Leonard Gorman, dated April 25, 2018.
[35] Dkt. 441; Dkt. 448.

has stated that he will only fix registration problems if they are brought to his attention, despite the fact that this problem affects nearly 2000 Indian voters.[36]

29. When the Executive Director of the Navajo Nation Human Rights Commission met with the Clerk/Auditor on May 25, 2018, the Clerk/Auditor stated that he believes assigning voters to new precincts "had nothing to do with redistricting" and confirmed that he had done little to ensure the accurate assignment of voters to the new precincts.[37]

30. The impact of the failure of the Clerk/Auditor to make precinct assignments is illustrated by Precincts Eight and Ten. These precincts are nearly 100% Indian. 576 of the voters in these two precincts appear to be assigned to precincts based on precincts as they existed under the unconstitutional districting plans. These precinct assignments are incorrect under the districting plans approved by the Court. Voters in those precincts have received the wrong ballots because of incorrect precinct assignments.[38]

31. It is highly probable that the voters who are not correctly assigned to precincts under the Court's redistricting plans will either not have their votes correctly counted or that their votes may be invalidated.

32. The County and Clerk/Auditor's misallocation of voters to the wrong precincts and election districts has resulted Navajo voters receiving the incorrect ballots in the mail, including ballots intended for different precincts and different School Board and Commission election districts.

33. It is highly probable that hundreds of Indian voters in the County have received an

[36] *See e.g.* Exhibit F, Declaration of Stephanie Holly, dated June 7, 2018.

[37] Exhibit G, Declaration of Leonard Gorman, dated June 7, 2018.

[38] Exhibit A, Cooper Eleventh Suppl. Decl. at ¶¶ 33-35; Exhibit H, Declaration of Corri Benally, dated June 7, 2018; Exhibit I, Declaration of Tara Benally, dated June 7, 2018; Exhibit J, Declaration of Colleen Benally, dated June 7, 2018; Exhibit F, Declaration of Stephanie Holly, dated June 7, 2018.

incorrect ballot in the mail.

34. The County and the Clerk/Auditor had notice of the problem.[39] They failed to correct the problem, failed to notify the Court of the problem, and proceeded with the June 2018 Primary Election schedule.

35. Upon information and belief, the Clerk/Auditor has not engaged in meaningful voter outreach and education to notify voters of the potential registration problems and many Indian voters are likely unaware that they have received incorrect ballots.[40]

36. Numerous voters have already received incorrect ballots, including but not limited to:

a. Corri Benally – Ms. Benally resides in Precinct 12, County Commission Election District 2, but received a ballot for Precinct 8, County Commission District 3.[41]

b. Stephanie Holly – Ms. Holly resides in Precinct 8, School Board District 3, but received a ballot for Precinct 3, School Board District 4.[42]

c. Colleen Benally – Ms. Benally lives and is registered in Precinct 8 and in School Board District 3 but her ballot does not have the proper candidates or race for that election district and states that it is for Precinct 10.[43]

d. Tara Benally – Ms. Benally resides in Precinct 8, School Board District 3, and Commission District 3, but in the County's official file of registered voters is erroneously assigned to Precinct 10 and School Board District 5. Ms. Benally received a ballot for Precinct 10 and Commission District 3 only. The ballot does not contain the race for School Board

---

[39] Exhibit E.

[40] *See e.g.* Exhibit H, Declaration of Corri Benally, Exhibit I, Declaration of Tara Benally, Exhibit J, Declaration of Colleen Benally and Exhibit K, Declaration of Clarence Rockwell.

[41] Exhibit H, Declaration of Corri Benally.

[42] Exhibit F, Declaration of Stephanie Holly.

[43] Exhibit J, Declaration of Colleen Benally.

District 3.[44]

37. Additional erroneously assigned voters include:

a. Tina Dee – Ms. Dee resides in Precinct 3, School Board District 3, but in the County's official file of registered voters is erroneously assigned to Precinct 8, School Board District 4.[45]

b. Sophina Ahtsosie – Ms. Ahtsosie resides in Precinct 3, School Board District 4 and Commission District 3, but in the County's official file of registered voters is erroneously assigned to Precinct 8, School Board District 3.[46]

38. On June 6, 208, Clarence Rockwell, Executive Director of the Utah Navajo Commission, traveled to Bluff, Utah, to visit the County's satellite voter registration office. During that visit he spoke with the Clerk/Auditor regarding his concerns with voter registration and ballot residency issues but received no substantive response.[47]

39. As of the date of this filing, there is no information posted on the County or Clerk/Auditor's website notifying voters of this problem.

40. Implementation of the Court-ordered election districts requires the correct allocation of voters in the County to precincts and election districts.

## IV. DISCUSSION

The Order and Judgment were valid orders of this Court. The County and the Clerk/Auditor had knowledge of the Order and Judgment. The County and Clerk/Auditor John David Nielsen have failed to substantially comply with the Court's Order and Judgment. The

[44] Exhibit A, Cooper Eleventh Suppl. Decl. at ¶ 21; Exhibit H, Declaration of Tara Benally.

[45] Exhibit A, Cooper Eleventh Suppl. Decl. at ¶ 20.

[46] Exhibit A, Cooper Eleventh Suppl. Decl. at ¶¶ 17-19.

[47] Exhibit K, Declaration of Clarence Rockwell.

statements made by County Commissioners that the County would pay no attention to the Order reaffirm the County's recalcitrance to comply with the Court's Order and Judgment. Mr. Nielson may be jointly liable with the County for contempt. The Court's Order and Judgment is in effect a command to Nielsen who is officially responsible for the conduct of the County's election affairs.[48] The voting rights of 500 to 2000 Indian voters are threatened by the County and Clerk/Auditor's actions.

The declarations by Ms. Corri Benally, Ms. Tara Benally, Ms. Stephanie Holly and Ms. Colleen Benally demonstrate how the County and the Clerk/Auditor's actions violate the Order and Judgment. All individuals received the wrong ballot. Three of the individuals have received no communication or instruction from the Clerk/Auditor on how to fix the problem. After reaching out to the Clerk/Auditor Stephanie Holly was informed on June 7, 2018, that her receipt of a wrong ballot was due to the Clerk not having a correct physical address location. Ms. Holly had given the Clerk a correct address location on May 2, 2018. In the June 7, 2018, communication, the Clerk did not correct the error. Rather, he informed Ms. Holly that she could either ask for a new ballot or visit a satellite voter registration office.[49] The Clerk/Auditor's email makes clear that he does not intend to take corrective action unless an individual notifies him of the problem first. Without affirmative steps taken by the Clerk/Auditor, Ms. Holly, Ms. Tara Benally, Ms. Corri Benally, and Ms. Colleen Benally will be unable to vote or they will vote in the wrong district. This deprives them of their fundamental right to vote.

---

[48] *Team Logistics, Inc. v. OrderPro Logistics, Inc.,* 2008 WL 974410 & nn. 40-43. (D. Kansas, 2008); *FTC v. Kuykendall*, 371 F.3d 745, 751 (10th Cir.2004). See *Gemco Latinoamerica, Inc. v. Seiko Time Corp*., 61 F.3d 94, 98 (1st Cir., 1995) (citing *Merriam Co. v. Webster Dictionary Co*., Inc., 639 F.2d 29, 34-35 (1st Cir. 1980)) ("A nonparty, although not directly bound by the order may be held in civil contempt if it knowingly aids or abets a party in violating the court order").

[49] *See* Exhibit F, Declaration of Stephanie Holly, dated June 7, 2018 at ¶¶ 15-17,

It is highly probable that many other Indian voters do not have specific knowledge of the new precincts and/or election districts and are therefore unaware that they have received the wrong ballot. It is also likely that many Indian voters do not have the means or knowledge to contact the Clerk/Auditor to ask for corrective action, and even if they do request a new ballot, such voters will have less time to make an informed decision when casting their ballot. The data from the supplemental declaration of William S. Cooper shows that this problem is extensive, affecting up to 2,000 people. Individual data from Ms. Ahstosie and Ms. Dee provide specific illustrations of the problem for other individuals whose registration information is inaccurately maintained by the Clerk/Auditor.

The County and Clerk/Auditor John David Nielsen have violated the Order and Judgment because they have failed to effectively or accurately implement the new precincts underlying Court-ordered election districts as described in the Order and Judgment. Their actions violate the Order because individuals are unable to vote in new Court-ordered election districts thus rendering the Court's redistricting ineffective. Their actions violate the Judgment because they have not implemented the Court-ordered election districts in direct violation of such judgment. Their actions undermine the authority of this Court. The County and Clerk/Auditor must be required to show cause why they should not be held in contempt.

The Court has broad equitable authority to remedy the County's ongoing violations of Plaintiffs' voting rights.[50] If the Court determines the Clerk/Auditor and the County to be in violation of the Order and Judgment, it should exercise its discretion to direct the County to be in full compliance.[51] The Court should also impose such sanctions as will ensure immediate

---

[50] *Hellebust v. Brownback,* 42 F.3d 1331, 1335-36 (10th Cir. 1994) ("The contour for a remedy in any equitable case is set by 'the nature of the violation'"); *see also Baker v. Carr,* 369 U.S. 186, 250 (1962); *Sanchez v. State of Colo.,* 97 F.3d 1303, 1328 (10th Cir. 1996).

[51] *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

compliance with and implementation of the Order.[52]

Both the Navajo Nation and the Individual Plaintiffs have maintained throughout this litigation that the County's electoral history compels a judicial remedy that goes beyond simply redrawing election districts.[53] That history is characterized by excluding Indians from the electoral process altogether, by preventing Indian candidates from qualifying for the ballot, by adhering to an at-large voting scheme in violation of the Voting Rights Act, by failing to provide required bilingual language assistance to Indian voters, by imposing, to this day, unlawful election districting schemes, and the fact that non-Hispanic White voters, despite being a minority of the overall population, have elected candidates of their choice since the County's founding.[54] The County's unwillingness to take the necessary steps to ensure it places Indian voters in the correct precincts and election districts in a manner that undermines the effectiveness of the Court-approved districting plans, is yet another example of why a broader remedy is required.

## V. RELIEF REQUESTED

The Court should enter an order reopening this case and reinstating it to the Clerk's active docket. The County and Clerk/Auditor John David Nielsen should be immediately ordered to appear before the Court and show cause why they should not be held in contempt of this Court's Order and the Judgment. The Court should further order such sanctions as required to

---

[52] Sanctions could include appointment of an administrator to run the 2018 election for the County. *See Reed v. Rhodes,* 642 F.2d 186 (6th Cir. 1981).

[53] See Plaintiffs' Motion for Summary Judgment on their Second Claim for Relief (Senate Factors), Dkt. 298, January 28, 2016 ("Senate Factors Motion"), at 34-39 and 65-69. *See also e.g*. Expert Witness Report of Dr. Daniel McCool, Dkt. 181, dated August 18, 2015.

[54] *Yanito v. Barber*, 348 F. Supp. 587 (1972); *U.S. v. San Juan County*, C-83-1286 D. Utah 1984); *U.S. v. San Juan County*, D. Utah C- 83-1287 (D. Utah 1984). See also Plaintiffs' Response to San Juan County's Objection to Plaintiffs' Proposed Remedial County Commission Plan, Dkt. 370, Oct. 26, 2016, at 6-7, Fn. 29-38.

ensure immediate compliance with the Order and the Judgment designed to fully remedy the ongoing violations and ensure prospective compliance. In order to achieve full remedial relief, the Court should exercise its discretion to order the County as follows:

1. In light of election deadlines, including a postmark deadline of June 25, 2018 for mailed ballots, and the fact that incorrect ballots have already been mailed to voters, the Court should set this motion for briefing and a hearing on an expedited basis.[55] The Court has authority to order an expediting briefing schedule.[56]

2. The primary election for the County Commission and School Board, currently scheduled for June 26, 2018, should be enjoined.

3. Individual Plaintiffs have filed a separate motion to enjoin the primary election until the County has fully complied with the Order and Judgment. Plaintiffs have also filed a motion for expedited discovery for an expedited hearing on the motion for an injunction. Disposition of these motions should also be expedited.[57] The County and the Clerk/Auditor should be ordered to take steps to ensure that all voters are correctly assigned to precincts under the districting plans approved by the Court immediately.

4. The Court should appoint an administrator to oversee the 2018 election for the County.[58]

---

[55] *See e.g.* Dkt. 343 & 343-1. *See e.g. Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) *citing United States v. Reliance Insurance Co.,* 799 F.2d 1382, 1387 (9th Cir.1986); *United States v. Schellong*, 717 F.2d 329, 336 (7th Cir.1983), cert. denied, 465 U.S. 1007 (1984).

[56] D.U. Civ. R. 7–1(b)(3)(B) ("The court may order shorter briefing periods and attorneys may also so stipulate.") *See Utah Republican Party v. Herbert, No*. 2:14-CV-00876-DN-DBP, 2015 WL 1954639, at *2 (D. Utah Apr. 29, 2015), aff'd, No. 2:14-CV-00876-DN-DBP, 2015 WL 13036889 (D. Utah June 10, 2015).

[57] *Id*.

[58] *See Reed v. Rhodes,* 642 F.2d 186 (6th Cir. 1981).

5. Commencing June 18, 2018, and ending on December 31, 2018, the County shall weekly file with the Court a compliance report setting forth with specificity, its compliance with the terms of this Judgment as it pertains to all voting-related practices and procedures for the 2018 Primary and General elections.

6. This Court's Order and Judgment should be modified because of changed circumstances pursuant to Rule 60(b), Fed. R. Civ. P., as follows:

a. The Court should retain continuing jurisdiction over this action to monitor and enforce the parties' compliance with the Judgment and all orders of the Court. The Court shall not terminate its jurisdiction without notice and hearing in which the parties are heard. To aid in the monitoring and enforcement of this Court's injunction and subsequent orders, and to facilitate the parties' access to the Court and the Court's docket, the Clerk of the Court shall maintain this action on its current active docket and shall not close the case until ordered to do so by this Court.

b. The Court shall terminate its continuing jurisdiction no earlier than the conclusion of the 2040 Decennial Census and the entry of all judgments and orders and adopted redistricting plans pursuant to the 2040 Decennial Census, and then only upon a showing by clear and convincing evidence of full compliance with this Judgment and that compliance will foreseeably be permanent.

c. Commencing with the Decennial Census in 2020 and for each census thereafter, San Juan County shall file with the Court and serve upon all parties or their counsel a report stating, with specificity, all information and data that may apply to the terms of this Judgment and any recommendations for a change in the terms of this Judgment or election districts to take into account the Decennial Census data.

d. Should San Juan County discover any actual or reasonably foreseeable non-compliance with the Judgment, within 14 days the County shall file with the Court a report stating, with specificity, all facts, circumstances and relevant data that may pertain to any actual or reasonably foreseeable non-compliance. Individual Plaintiffs may respond to the report and the Court shall hold a hearing to determine all issues of non-compliance and enter an order of remedial relief.

e. Should Individual Plaintiffs allege any non-compliance with this Judgment by San Juan County, Individual Plaintiffs shall first provide notice of non-compliance to the County, and the parties shall in good faith attempt to resolve the alleged non-compliance. If no resolution is reached, Individual Plaintiffs may at any time petition the Court stating, with specificity, all facts, circumstances and relevant data that may pertain to any alleged non-compliance and any proposed remedial relief. The Court may enjoin from implementation any plan which is alleged to be in non-compliance pending the resolution of plaintiffs' claims, hold a hearing, and enter an order of remedial relief. Individual Plaintiffs' failure to provide notice of non-compliance or petition the Court for remedial relief shall not constitute a waiver of any claim or right to relief based on non-compliance, and such failure shall not be a defense or bar to the County's liability for any obligation it may have pursuant to this Judgment or any Utah or federal law.

f. Commencing December 2018, San Juan County shall annually file with the Court a compliance report setting forth with specificity, its compliance with the terms of this Judgment.

g. The Court shall conduct an annual status hearing beginning in December 2018, to hear the parties or their counsel's report of compliance with this Judgment. The Court may order remedial relief regarding monitoring and enforcement of this judgment and redistricting plans.

7. The Court should enter a Declaratory Judgment pursuant to 28 USC § 2201 determining the rights and duties of the parties.

8. The Court should enter a judgment awarding Individual Plaintiffs their costs of monitoring Defendant's compliance with the Order and Judgment, and for this enforcement action, including a reasonable attorney's fee.

DATED this June 12th 2018.

MAYNES, BRADFORD, SHIPPS & SHEFTEL, LLP

by: *__/s/ Steven C. Boos__*
Steven C. Boos
Eric P. Swenson
Maya L. Kane
*Attorneys for Individual Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of June, 2018 I electronically filed the foregoing **MOTION TO REOPEN AND FOR ORDER TO SHOW CAUSE AND MODIFY ORDER AND JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT (HEARING REQUESTED)** with the U.S. District Court for the District of Utah. Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

Jesse C. Trentadue
Carl F. Huefner
Britton R. Butterfield
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, Utah 84111
E-mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*__/s/ Suzanne P. Singley__*
Suzanne P. Singley